# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JONATHAN M. CRAWFORD,
        Petitioner,

v.                                                                                                                                                             Civil action no. 3:04CV23
                                                                                                                                                                 Criminal action no. 3:02CR35

UNITED STATES OF AMERICA,
        Respondent.

## MEMORANDUM OPINION AND REPORT AND RECOMMENDATION

### I. PROCEDURAL HISTORY

On March 22, 2004, the *pro se* petitioner, an inmate at FCI-Beckley, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody.

By Order entered on April 9, 2004, the respondent was ordered to answer the motion. On May 10, 2004, the respondent filed Motion of the United States to Dismiss and Response to Petitioner's Motion Made Pursuant to 28 U.S.C. § 2255. On June 30, 2004, the Court issued a Roseboro[1] notice advising the petitioner of his right to file a response to the respondent's motion to dismiss. On August 18, 2004, the petitioner asked for an extension of time to respond which was granted by order entered on August 24, 2004. The petitioner never filed a response.

Also, on August 18, 2004, the petitioner filed a motion to file an amended brief so he could raise a claim under Blakely v. Washington, 124 S. Ct. 2531 (2004). In the alternative, he requested that his motion be deemed an amended brief.

---

[1] Roseboro v. Garrison, 528 F. 2d 309, 310 (4th Cir. 1975).

This matter, which is pending before me for initial review and report and recommendation pursuant to the April 6, 2004 Order of Referral issued by the Honorable W. Craig Broadwater, United States District Judge, is ripe for review.

**A. Conviction and Sentence**

On July 9, 2002, a grand jury for the Northern District of West Virginia indicted the petitioner of conspiracy to possess with the intent to distribute cocaine base in violation of 21 U.S.C. § 846 (Count 1) and distribution of cocaine base in violation of 21 U.S.C. § 841 (Count 28).

On December 2, 2002, the petitioner signed a plea agreement in which he agreed to plead guilty to distribution of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C)(Count 28). The parties stipulated to relevant conduct of at least 50 grams but less than 150 grams of cocaine base also known as "crack." In the plea agreement, the petitioner agreed to waive his right to appeal or collaterally attack his sentence. He also waived "any right he may have to ask the court for any departures under USSG §§ 5H1.1 through 5H1.12, 5K1.1 or 5K2.0 through 5K2.21." On December 2, 2002, the petitioner appeared in Court and entered a guilty plea to Count 28.

On March 19, 2003, the petitioner appeared before the Court for sentencing. The Court found a total offense level of 29, a criminal history category of III and a guideline range of 108-135 months. The Court sentenced the petitioner to 108 months. He did not appeal his conviction and sentence.[2]

---

[2]The petitioner states he did not file a direct appeal on advice of counsel that a motion for downward departure would be filed on his behalf, and he believed the only issue for appeal was that he qualified for a downward departure. The Government indicates that the petitioner raised a separate claim of failure to file a direct appeal. It is not clear whether the petitioner is attempting to raise a claim of failure to appeal. Even if he is, the claim is not sufficiently pled. As noted by the Government, the petitioner "never states either that his counsel promised him that he would file an appeal or that petitioner ever directed his counsel to file an appeal."

## B. Federal Habeas Corpus

### Petitioner's Contentions

The petitioner asserts that his attorney was ineffective because he negotiated an "unconscionable agreement" as defined by the Uniform Commercial Code ["UCC"] and failed to file a timely motion pursuant to U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f)(1)-(5). He also asserts his attorney was ineffective regarding his failure to receive a reduction for providing substantial assistance to the Government.

The petitioner further asserts that an injustice occurred when Judge Broadwater presided over the plea hearing, but Judge Stamp sentenced him.

### Respondent's Contentions

The respondent asserts that the motion should be dismissed because the petitioner's plea agreement contained a waiver of the right to collaterally attack his sentence. The respondent further asserts that the UCC does not apply to plea agreements, that the plea agreement was not unconscionable and that the petitioner was not provided ineffective assistance of counsel.

## C. Recommendation

Upon reviewing the record, I recommend that the petitioner's § 2255 motion be denied because his claims are without merit.

## II. ANALYSIS

## A. Waiver

The Fourth Circuit has held that waiver of appellate rights in a plea agreement is valid as

long as it is knowing and voluntary. United States v. Attar, 38 F.3d 727 (4th Cir. 1994), cert. denied, 514 U.S. 1107 (1995). In United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005), the Fourth Circuit held that it saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights. Thus, the Fourth Circuit held that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. The Fourth Circuit also noted that it has allowed a "narrow class of claims" to be raised by a defendant on direct appeal despite a general waiver of appellate rights and referenced United States v. Marin, 961 F.2d 493, (4th Cir.1992) ("a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race."); United States v. Attar, 38 F.3d 727, 732 (4th Cir.1994) ("holding that a general waiver of appellate rights could not be construed to bar a defendant from raising a claim that he had been wholly deprived of counsel during his sentencing proceedings"). Id. at 220, n. 2. However, because Lemaster did not argue that his claims fell within one of these exceptions, the Fourth Circuit did not address whether a court should address similar claims in a § 2255 motion despite a waiver of the right to file a collateral attack. Nonetheless, the Fourth Circuit reiterated that it saw no reason to treat waivers of collateral attack rights different than waivers of direct appeal rights. Id.

In the instant case, the petitioner is raising claims of ineffective assistance of counsel during the plea process and sentencing process. In Braxton v. United States, 358 F. Supp. 2d 497, (W.D. Va. 2005), the Western District of Virginia held that "§ 2255 motions claiming ineffective assistance of counsel that do not relate directly to the validity of the plea or the § 2255 waiver itself are waiverable." Id. at 503. However, based on footnote 2 in Lemaster, the undersigned finds that the

4

waiver of the right to collaterally attack does not bar the petitioner' claim that his attorney was ineffective regarding sentencing. With regard to the petitioner' allegation that his attorney was ineffective during the plea negotiation process, "a § 2255 waiver should not bar ineffective assistance of counsel claims or claims that a guilty plea was involuntary, just as direct appeal waivers do not bar those claims." Butler v. United States, 173 F. Supp.2d 489, 494 (E.D. Va.2001). Thus, the undersigned finds that the petitioner's claims are not barred by the waiver and that the respondent's motion to dismiss should be denied.

## B. Ineffective Assistance of Counsel

According to the petitioner, his attorney was ineffective for negotiating an unconscionable plea agreement, for failing to file a motion for a safety valve reduction under U.S.S.G. § 5C1.2 and for failing to file a motion for reduction for providing substantial assistance to the Government which allowed it to prosecute other individuals.

With regard to claims of ineffective assistance of counsel, counsel's conduct is measured under the two part analysis outlined in Strickland v. Washington, 466 U.S. 668, 687 (1984). First, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness. Id. at 688. In reviewing claims of ineffective assistance of counsel, "judicial scrutiny of counsel's performance must be highly deferential," and the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 689-90.

Second, the petitioner must be prejudiced by counsel's performance. In order to demonstrate prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

5

probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If the defendant shows no prejudice from the alleged ineffectiveness of counsel, courts need not address counsel's performance. Fields v. Att'y Gen. of Maryland, 956 F.2d 1290, 1297 (4th Cir.), cert. denied, 506 U.S. 885 (1992).

A defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden regarding the prejudice prong: he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988), cert. denied, 488 U.S. 843 (1988). While "[i]neffective assistance claims in the guilty plea context are usually evaluated under standards announced in Hill v. Lockhart, 474 U.S. 52 (1984)," a petitioner's challenge to his counsel's actions which are not in relation to the entry of his guilty plea, are subject to a Strickland analysis. United States v. Hanger, 991 F.2d 791 (4th Cir. 1993) (Table); United States v. Whisonant, 229 F. 3d 1145 (4th Cir. 2000); Royal v. Taylor, 188 F. 3d 239 (4th Cir. 1999).

The petitioner has not asserted that he would not have pleaded guilty and would have insisted on going to trial. Thus, he has failed to satisfy the prejudice prong as set forth in Hill. Even if the claim was to be evaluated under the Strickland standard regarding ineffective assistance of counsel, he has failed to meet such standard regarding his plea agreement.

### 1. **Applicability of the Uniform Commercial Code to Plea Agreements**

The petitioner relies on the UCC to support his contention that his attorney was ineffective for negotiating an unconscionable plea agreement was unconscionable. According to the petitioner,

6

the plea agreement was unconscionable because the agreement contained unfair terms. He further states that he was denied due process because the legality of the plea agreement was not reviewed under the provisions of the UCC.

"Plea agreements involve a *quid pro quo* between a criminal defendant and the government. In exchange for some perceived benefit, defendants waive several of their constitutional rights (including the right to a trial) and grant the government numerous 'tangible benefits, such as promptly imposed punishment without the expenditure of prosecutorial resources.'" I.N.S. v. St. Cyr, 533 U.S. 289, 321-322 (2001).

Plea agreements are construed in accordance with principles of contract law so that each party receives the benefit of its bargain. United States v. Holbrook, 368 F.3d 415, 420 (4th Cir.2004). In United State v. Harvey, 791 F.2d 294, 300 -301 (4th Cir. 1986), the Fourth Circuit elaborated on the use of contract law with regard to plea agreements:

> In the process of determining whether disputed plea agreements have been formed or performed, courts have necessarily drawn on the most relevant body of developed rules and principles of private law, those pertaining to the formation and interpretation of commercial contracts. But the courts have recognized that those rules have to be applied to plea agreements with two things in mind which may require their tempering in particular cases. First, the defendant's underlying "contract" right is constitutionally based and therefore reflects concerns that differ fundamentally from and run wider than those of commercial contract law. Second, with respect to federal prosecutions, the courts' concerns run even wider than protection of the defendant's individual constitutional rights--to concerns for the "honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government."That the resulting interpretive doctrine is an amalgam of constitutional, supervisory, and private law concerns does not mean, however, that it is without form. Some ordering principles and guidelines have clearly emerged. Those relevant to this appeal bear emphasis here.
> Private law interpretive principles may be wholly dispositive in an appropriate case. For example, whether a written agreement is ambiguous or unambiguous on its face should ordinarily be decided by the courts as a matter of law. If it is unambiguous as a matter of law, and there is no suggestion of government overreaching of any kind, the agreement should be interpreted and enforced accordingly. Neither side should be

> able, any more than would be private contracting parties, unilaterally to renege or seek modification simply because of uninduced mistake or change of mind. Such an approach is conformable not only to the policies reflected in private contract law from which it is directly borrowed, but also to constitutional concerns of fundamental fairness in "bargaining" for guilty pleas, and to the wider concerns expressed in the exercise of supervisory jurisdiction over the administration of federal criminal justice.
>
> On the other hand, both constitutional and supervisory concerns require holding the Government to a greater degree of responsibility than the defendant (or possibly than would be either of the parties to commercial contracts) for imprecisions or ambiguities in plea agreements. This is particularly appropriate where, as will usually be the case, the Government has proffered the terms or prepared a written agreement-- for the same reasons that dictate that approach in interpreting private contracts.
>
> As a necessary corollary, derelictions on the part of defense counsel that contribute to ambiguities and imprecisions in plea agreements may not be allowed to relieve the Government of its primary responsibility for insuring precision in the agreement. While private contracting parties would ordinarily be equally chargeable--so far as enforceability and interpretation are concerned--with their respective counsels' derelictions in negotiating commercial contracts, different concerns apply to bargained plea agreements. Unlike the private contract situation, the validity of a bargained guilty plea depends finally upon the voluntariness and intelligence with which the defendant--and not his counsel--enters the guilty plea.

Id. at 300-301(internal citations omitted).

"The formation of binding plea agreements is governed not by the Uniform Commercial Code but by the Federal Rules of Criminal Procedure, which requires, among other things, that the court approve the plea agreement and find it to have a factual basis." United States v. Partida-Parra, 859 F.2d 629, 634 (9th Cir. 1988).

Here, the petitioner's argument addresses the formation and voluntariness of his plea agreement which is not governed by the UCC. It appears to the undersigned that the petitioner is attempting to avoid the Court's finding that he plea was voluntary by asserting his plea is unconscionable under the UCC. However, even if the UCC applied the plea agreement is not unconscionable.

In Hume v. United States, 132 U.S. 406, 411 (1889), the Supreme Court defined

unconscionabililty which requires court intervention as follows:

> It may be apparent from the intrinsic nature and subject of the bargain itself; such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other; which are unequitable and unconscientious bargains.

Here, there is nothing which reveals the contract was unconscionable. First, the petitioner asserts that his counsel knew or should have known based on a document titled "United States' Version of Offense for the Above-Named defendants" that the Government "had no compelling evidence that the petitioner was a member of a drug distribution conspiracy." Thus, he asserts that the plea agreement was unfair to him because the Government gave up nothing as it did not have a conspiracy case against him.

"A tacit or mutual understanding between or among the alleged conspirators is sufficient to show a conspiratorial agreement." United States v. Chorman, 910 F.2d 102, 109 (4th Cir. 1990). "A conspiracy may be proved wholly by circumstantial evidence. Circumstantial evidence tending to prove a conspiracy may consist of a defendant's "relationship with other members of the conspiracy, the length of this association, [the defendant's] attitude [and] conduct, and the nature of the conspiracy." United States v. Burgos, 94 F.3d 849, 858 (4th Cir. 1996), cert. denied, 519 U.S. 1157 (1997) (citation omitted). Once a conspiracy is established, all that is required is a "slight connection between the defendant and the conspiracy to support the conviction." United States v. Brooks, 957 F. 2d 1138, 1147 (4th Cir.), cert. denied, 505 U.S. 1228 (1992).

The Government asserts that there have been several drug conspiracy convictions "involving organization similar to that which existed in and around Centre Street" and other individuals involved in the conspiracy had entered a plea. There is nothing before the Court which indicates the Government did not have a conspiracy case against the petitioner.

The petitioner further asserts that while the Government agreed to a sentence reduction pursuant to U.S.S.G. § 3E1.1 such reduction was governed by the Sentencing Guidelines, and thus, the Government promised something already provided to him under the law.

In order to obtain a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, "the defendant must prove by a preponderance of the evidence that he clearly demonstrated recognition and affirmative acceptance of personal responsibility for his criminal conduct." United States v. Martinez, 901 F. 2d 374, 377 (4th Cir. 1990). A guilty plea does not automatically entitle the defendant to a reduction for acceptance of responsibility. United States v. Harris, 882 F. 2d 902 (4th Cir. 1989). Pursuant to the plea agreement, the Government agreed to make a recommendation that the petitioner receive a reduction. The Government obligated itself to make the recommendation when it need not do so. While the petitioner asserts that such recommendation had no impact whatsoever on the Court, he has not supported his assertion with any facts.

The petitioner further asserts that the agreement was unconscionable because it did not require that he be sentenced at the low end of the guideline range, and that had the plea agreement required that he be sentenced at the lower end of the guideline range, the Court would have been required to sentence him at the lower end. However, no such recommendation would be binding on the Court.

"Plea bargains impose obligations on the prosecution, not the courts." United States v. Gordon, 61 F.3d 263, 267 (4th Cir. 1995). Thus, the petitioner's attorney could not have required that the petitioner be sentenced at the low end of the guidelines. Moreover, the petitioner's argument is without merit because he was in fact sentenced at the low end of the guidelines. The guideline range was 108-135 months, and he was sentenced to 108 months.

Additionally, the petitioner asserts that the plea agreement was unconscionable because he

was required to agree to relevant conduct of 50-150 grams of cocaine base, but the information given to the Government regarding his drug activity was untrustworthy. He asserts that his relevant conduct included drugs amounts for which Vernell Newell, Cheryl Welch and Kirk Grantham indicated he was responsible. However, he states he was incarcerated from January 10, 1998, to September 16, 1998, and could not have sold drugs to Vernell Newell in the summer of 1998. He also states that the Government attributed to him amounts of cocaine base that Grantham saw Lane possess not Crawford.

However, the petitioner received the benefit of his plea because the stipulated amount was below the amount the Government's evidence revealed he was responsible.

Thus, the undersigned finds that the plea agreement was not unconscionable and that the petitioner's attorney was not ineffective in negotiating the plea agreement for the petitioner.

**2. Substantial Assistance**

The petitioner asserts that his attorney negotiated away his right seek a departure under U.S.S.G. § 5K1.1 for providing substantial assistance and that his attorney promised him he would be eligible for a sentence reduction despite his waiver. According to the petitioner, his attorney advised him that a motion for reduction of sentence would be filed on his behalf and that he had a good chance of receiving a sentence reduction. However, his attorney failed to advise him that under the terms of the plea agreement the Court was precluded from accepting a motion for reduction of sentence and a motion for sentence reduction based on substantial assistance. He further asserts he is entitled to a reduction for providing substantial assistance.

According to the Fourth Circuit, the Government has the discretion to determine whether to

11

make a motion for a reduction in a defendant's sentence for rendering substantial assistance. See United States v. Dixon, 998 F.2d 228, 230 (4th Cir. 1993). However, the Government may not withhold such motion that it is obligated to make by the terms of the plea agreement. See United States v. Wallace, 22 F.3d 84, 87 (4th Cir.), cert. denied, 513 U.S. 910 (1994). Further, the Government may not withhold a motion for substantial assistance for an unconstitutional reason, such as race or religion, or for a reason "not rationally related to a legitimate Government end." Wade v. United States, 504 U.S. 181, 185-86 (1992). The defendant has the burden of establishing that the Government's refusal to make a substantial assistance motion violates one of the two limitations on its discretion or breaches the plea agreement. See Id.; Dixon, 998 F.2d at 230.

While the petitioner did give signed and sworn statements and grand jury and trial testimony, the Government asserts that "at best, petitioner lived up to the terms and conditions of the plea agreement." The Government did not file a motion for substantial assistance because "it would appear that the United States Attorney disagreed with petitioner's view of the value of his cooperation." The Government has the discretion to make a motion for substantial assistance. Thus, he was not prejudiced by the fact that his plea agreement contained a wavier of the § 5k1.1 motion. Moreover, at the plea hearing, the petitioner never alleged that he was promised a substantial assistance motion. Additionally, at sentencing, the petitioner never alleged that he was promised a reduction for substantial assistance. Furthermore, on February 10, 2003, the petitioner's attorney did file a motion for departure albeit for reasons other than substantial assistance. The plaintiff has failed to show that he was prejudiced by the waiver in his plea agreement regarding a 5K1.1 downward departure. Thus, this claim of ineffective assistance of counsel is without merit.

**3**. **Safety Valve**

Additionally, the petitioner's allegation that his attorney was ineffective for failing to file a motion for a safety valve reduction under U.S.S.G. § 5C1.1 is without merit. On August 20, 2003, the petitioner's attorney filed a "Motion for Departure from Present Sentencing Guideline Level Pursuant to U.S.S.G. Section 5C1.2 and Title 18 U.S.C. Section 3553(f)." The petitioner's attorney was not ineffective for failing to file the motion earlier because the petitioner did not meet the requirements for a safety valve reduction. U.S.S.G. § 5C1.1 provides as follows:

> **a)** Except as provided in subsection (b), in the case of an offense under 21 U.S.C. § 841, § 844, § 846, § 960, or § 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) set forth below:
>
> **(1)** The defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of 4A1.3 (Departures Based on Inadequacy of Criminal History Category);
>
> **(2)** The defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> **(3)** The offense did not result in death or serious bodily injury to any person;
>
> **(4)** The defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
>
> **(5)** Not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

If the defendant meets the criteria set forth above his sentence can be decreased by 2 levels.

See U.S.S.G. 2D1.1(b).

Here, as previously found by the Honorable W. Craig Broadwater in ruling on the petitioner's August 20, 2003 motion for departure, the petitioner does not meet the requirements for obtaining a safety valve reduction because he had 5 criminal history points and the statutes to which he pled guilty make no provision for a minimum base offense level. (See May 12, 2004 Order). Therefore, because the petitioner did not qualify for a safety valve reduction, his attorney was not ineffective for failing to file a motion for a safety valve reduction prior to sentencing.

**C. Different Judges Presiding Over Different States of the Case**

The petitioner asserts that "an injustice occurred where the Honorable Judge Broadwater accepted the plea of guilty but was not present to sentence Crawford." The petitioner argues that "it is doubtful that the Honorable Judge Broadwater, being familiar with the substantial assistasnce Crawford provided and the rights Crawford waived would have sentenced him to the top of the guideline imprisonment range." Here, the plea agreement was part of the Court's record. Thus, the Honorable Judge Stamp would have been familiar with the rights the petitioner waived. Further, the petitioner does not state what substantial assistance he provided and how Judge Broadwater would have been aware of it but Judge Stamp would not have been. Therefore, this claim is without merit.

**D. Evidentiary Hearing**

28 U.S.C. § 2255 provides in pertinent part as follows:

> [u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

See also United States v. Witherspoon, 231 F.3d 923 (4th Cir. 2000).

The petitioner's motion and the Government's response conclusively establish that the petitioner is entitled to no relief. Thus, he is not entitled to an evidentiary hearing.

### III. MOTION TO AMEND

On August 18, 2004, the petitioner filed a motion to amend so that he could raise a Blakely claim. The undersigned recommends that the motion to amend be denied because it would be futile.

Blakely v. Washington, 124 S. Ct. 2531 (2004) as an extension of Apprendi v. New Jersey, 530 U.S. 466 (2000), holds that "when a judge inflicts punishment that the jury verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority." Blakely, 124 S. Ct. at 2537 (citations omitted).

Recently, the Supreme Court has held that Blakely applies to federal sentencing guidelines. United States v. Booker, 125 S. Ct. 738 (2005). Specifically, in Booker the Supreme Court issued a two part decision. In the first part, the Supreme Court held that the mandatory sentencing guidelines violated a defendant's Sixth Amendment right to a jury trial because a judge, not a jury, determines facts which could increase the defendant's sentence beyond the sentence which could be imposed based on jury fact finding. In the second part of the decision, the Supreme Court severed the unconstitutional provisions from the Sentence Reform Act and made the guidelines advisory and established an unreasonableness standard of review for sentences on appeal. While the Supreme Court determined that both of its holdings in Booker applied to all cases on direct review, the Supreme Court did not address whether Booker applies retroactively to cases on collateral review.

While the Fourth Circuit Court of Appeals has not ruled on the retroactivity of Booker, other circuits have held that Booker does not apply retroactively. See Varela v. United States, 400 F. 3d

15

864 (11th Cir. 2005); United States v. Price, 2005 WL 535361 (10th Cir. 2005); McReynolds v. United States, 397 F. 3d 479 (7th Cir. 2005); Humphress v. United States, 398 F. 3d 855 (6th Cir. 2005); Lloyd v. United States, 2005 WL 1155220 (3d Cir. 2005); Guzman v. United States, 404 F. 3d 139 (2d Cir. 2005). Thus, in accordance with these decisions, the undersigned recommends that the petitioner's motion to amend be denied because Blakely and Booker do not applied retroactively to collateral review.

## IV. RECOMMENDATION

The undersigned recommends that the Court enter an Order **DENYING** the respondent's motion to dismiss because the motion is not barred by the waiver; **DENYING** the petitioner's § 2255 motion because his claims of an unconscionable plea agreement and ineffective assistance of counsel are without merit; and **DENYING** the petitioner's motion to amend as being futile because Booker and Blakely do not apply retroactively to cases on collateral review.

Any party may file within ten (10) days after being served with a copy of this Recommendation with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable W. Craig Broadwater, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of Court is directed to mail a copy of this Recommendation to the *pro se* petitioner

and the United States Attorney for the Northern District of West Virginia.

Dated: June 3, 2005

<u>James E. Seibert</u>  
JAMES E. SEIBERT  
UNITED STATES MAGISTRATE JUDGE